Good morning, your honors. Albert Israel for the Appellant Marquis Publications. Mr. Israel, before you get started, do we have Mr. Cavanaugh on the telephone? Yes, your honor. Mr. Cavanaugh, can you hear okay? Yes, absolutely. Alrighty. Mr. Israel, you have the floor. Thank you very much. As the court knows, this case involves the Hague Convention and whether or not service of process on an English company by ordinary mail to a post office box constitutes valid service. There is no doubt that there is a split of authority on this issue as to whether or not the Hague Convention permits service by mail. Jurisdictions allow it and jurisdictions don't allow it, interpreting section 10A. The Ninth Circuit has not come to a definitive conclusion. District courts have split on it. The purpose of the Hague Convention, as I could discern and the cases seem to indicate, is to ensure that service of process is affected when you're dealing with a foreign corporation. Did your client file anything that indicates that it did not receive the summons-in complaint? That was not an issue, your honor, before the district court. Well, there was a motion to set aside the default judgment, right? Right. It was based solely on the question of whether or not there was compliance with the Hague Convention. Let me ask you, did they file anything that said they did not receive the summons-in complaint? No, there's no declaration that says that they did or that they didn't. Okay. The authority that we are urging on this court is the authority that section 10A does not permit service of process by mail. The Hague Convention was very strict in how it dealt with service of process, and it's not unusual to have had a provision that said that you could serve judicial documents by mail to later rest. The question of what function mail would provide. In this case, Mr. Kavanaugh's client had the opportunity to ascertain the registered address for marquee publications and to affect service in a means that was consistent with all the cases, even the ones that have allowed service by mail, and that would be by registered mail, by express mail, or some other means that would guarantee service. Now, is your argument that section 10A, saying send, as distinct from sections 10B and C that specifically refer to service of process, authorizes the sending of judicial documents other than service of process? I am of that position, Your Honor. I'm also of the alternative position that if mail is permitted, it has to be by a registered type of mail so that there is some assurance. Serving to a post office box is probably the most risky type of service that one could undertake, especially when you're dealing with two mail services, United States and English. Why is that so risky? If that's where they want to get their mail, why is that risky? You have no idea if they'll ever receive it. Well, that's why I asked you if there was anything from your client that said they didn't receive it. I mean, if somebody says this is where I get my mail, send it to P.O. Box 1552, Phoenix, Arizona. Well, Your Honor, there are cases that we have cited that say that knowledge of the action is not sufficient to satisfy service of process. You can have knowledge that an action is ongoing. That may be, but why shouldn't we assume that people who want their mail sent to a box get their mail? Well, a lot of companies utilize post office boxes, but they have registered agents for service of process, and those are always physical addresses. Just like there was a physical address here. There was no excuse for not ascertaining the physical address, finding the defendant there, and serving the defendant there. Are you aware of the position that the State Department has taken with respect to 10A in the wake of Bankston v. Toyota Motor Company decided by the Eighth Circuit? I have read that, Your Honor. And the State Department, at least as I read it, says that service of process by mail under 10A is all right, provided it is registered mail. I have read that. And do you rely on that? I accept that for the proposition of registered mail, but I think that what we're doing is we're going back and we're looking at the intent of the drafters of the convention in 1967 and respectfully now what the State Department considers to be an interpretation. I think that the State Department, under that position, you win. Why don't you want to rely on the State Department? Because they say you have to register mail. This is not registered mail. Well, that's why I acknowledge that I would go along with that authority to the extent that registered mail is required. Okay. Right. Thank you, Your Honor. Thank you very much. Excuse me. Mr. Kavanaugh, are you still around? Yes, I am, Your Honor. You've got the floor, sir. Thank you. And I first wish to thank the Court for the opportunity to participate by telephone under these circumstances. Basically, we see this as a question of a strict versus a contextual interpretation of this treaty, whether to read the literal language of Article 10 or interpret it in the context of the entire treaty and its adoption and the way it's been implemented. And this question, you know, appears to be simple but really cannot be answered in a vacuum. And this is why we believe there has been apparent inconsistencies amongst the various prior decisions, but it also is the reason that the district court came out the way it did. The answer turns on two facts. First, whether the signatory country where the defendant was at the time of service had previously objected to Article 10A and whether the signatory's internal laws permit service by mail. And here, the U.K. has not objected to 10A, as other countries have, notably Germany and others. And also, the internal laws of the U.K. allow service by mail. Do they allow service by mail on a corporation to a P.O. box? There is nothing definitive saying they don't. Well, we have a statement by an English solicitor that says that they do not. I believe... Do we have anything else one way or the other? No, Your Honor. I believe... So the only thing we have then is the statement from the solicitor that says that that's not a permitted method of service? I believe, Your Honor, the English solicitor's statement was his opinion. That's right. I understand that. As opposed to a citation of definitive English law. But my question is, do we have anything else on English law besides the opinion of the solicitor? Not on the record, Your Honor. Okay. And we would submit that Ackerman should be followed here, as the district court did, not merely because of the majority view, but because we believe it's the better rationale. And as our Griggs case explained in interpreting a following Ackerman, that Article 10 falls within a series of articles in the Convention that deal with alternative methods of service of process. And this Court has already cited decisions such as Randolph v. Hendry and its Leidas v. Chalela decision that is leaning towards unfollowing Ackerman. The question of what is service and what it... as opposed to send, I think it's quite rightly answered by the fact that it is in a section which deals with service of process. Now, that's an interesting argument because you're asking me to infer meaning from a section where something is placed rather than from the explicit text of that which we are being asked to read. That's correct. I believe that an appropriate application and interpretation of this treaty requires that broad contextual analysis. That is the position that we are advocating, Your Honor. Well, I understand the sensible argument can be made and often is that we should use as an interpretive tool the structure of a document and where a text is placed within that structure. But what do we do here when within Section 10 we have twice very explicit use of the term service process and once very explicit use of the term send? Are we to assume that the drafters were so incompetent that they meant to say service of process but instead they said send? I think that's your position, isn't it? Well, I don't know if I would go so far as to say that they made a mistake. What other explanation do you have for their using the word send instead of the phrase service of process? I believe the other two sections are speaking about using state facilities, judicial officers and so forth. And in that context, I believe- And they're saying in that setting, here's how you do a service of process. Correct. And they say service of process. Correct. But in the other section, in 10A, there they're using send. That's correct. It seems incongruous to me that they would choose to use something different in a section talking about service of process, that they would mix up a non-service of process type mailing with a service of process provision. And I understand that argument and so far as it goes, that structural argument is a sensible argument. I just have trouble reconciling it with the word usage and we're kind of in a fix and obviously that's why we're ending up with the circuit split. Correct, Your Honor. Let me ask you a different question. Sorry, since we're on the telephone, I should have identified myself. This is Jeff Fletcher. That's no problem, Your Honor. Thank you. Does it matter or should it matter to us that service by ordinary mail is not permitted within the United States, here in a federal district court in California? That is to say, the federal rules don't permit it and the California rules, which the federal rules incorporate for a federal court sitting in California, also do not permit it. That is to say, if you're sending service from a federal district court in California domestically, you have to have some form of return receipt requested before that's valid service. Does that matter to us? I don't think it should, Your Honor, for the following reason. That the entire intent and purpose of this convention is to deal with international service and there is a deference, at least an explicit deference in the federal rules to dealing with the treaty for purposes of service. I think that's a fair answer. Let me ask you this with respect to British practice. I take it from the opinion of the solicitor that under English law, service by mail, provided it goes to the appropriate place, ordinary mail, not return receipt requested, not registered mail, is permitted. But so far as I read the opinion of the solicitor, it referred only to domestic English cases. That is to say, a suit filed in Great Britain with a British defendant. Ordinary mail is permitted. It may be a different question as to whether or not Britain would permit service by ordinary mail as to mail coming from abroad. The reason I say that is the British might trust their own mail system. In fact, I think they have an irrational pride in their own mail system. But if it's international mail, they are not dependent merely upon the British mail system. They're depending on all the links that would have brought the mail from abroad into the British mail system. So do we know that the British would allow ordinary mail, not return receipt requested, but ordinary mail with respect to service coming in from abroad and delivered within Great Britain? We don't, Your Honor. There's nothing in the record on that point. Do you agree that that presents a different practical problem than purely domestic mail within Great Britain? I see that it does in theory. I believe that this treaty. Do you think it might in practice? Yes, but for the fact that this treaty appears to be built upon some form of comedy and recognition of the signatory state's mailing system, so that it might in practice have an impact. Although, you know, there's the underlying legislative history, if I can call it that way, or perhaps the drafting history of the treaty. As you know, 10A is written oddly. Not only is there the word send, but there's a different word that gives one pause. And that is, I'll just read the prelude and then A so we can do the whole sentence. Provided the state of destination does not object, the present convention shall not interfere with, and here comes A, the freedom to send judicial documents by postal channels directly to persons abroad. That is to say, it doesn't interfere with the freedom of the sender to send them out of the country. That is to say, to send them to persons abroad. Why doesn't it say from abroad? Because that's really what we're asking is whether or not mail coming from abroad and how it should be treated. I think, Your Honor, it's hit on a very interesting question, and I don't have an answer to it. It may be a question of, again, unfortunate, inartful drafting, but I think it is a valid question. It would appear on its face to be subject to an interpretation as applying to the outgoing from a member country, as opposed to the incoming, if I follow, Your Honor, correctly. Yes. There's an earlier draft report quoted in a law review article with respect to this, which talks about this article, but an earlier draft of the article having been focused upon whether or not this form of mail is permitted by the sending country, rather than by the receiving country. That's a draft report. Let's see. You can find it in an article by a certain Andrew Cooper in the 13 Michigan Journal of International Law, written in 1992. But what he's just doing, he's just quoting from earlier treaty history. And if that's right, and I'm not sure that it's right, it says that the two languages actually chosen on purpose, not by accident, and it really refers to what the practice or custom or permitted things are in the sending country, not the receiving country. Are you on? I'm following, Your Honor. Yes, I am following, Your Honor. But you don't have an answer? I don't have an answer, but it would seem strange to me that the way most of the treaty looks to appear to deal with the incoming aspects of this practice, I would find it interesting that there would be one provision that would deal with the outgoing practice. However, it's not inconceivable that the drafters felt the need to address that. I must say on various points, I'm entirely sympathetic with both sides in this case, because the best we can say about the hate convention is that it has caused confusion. It's caused a circuit split. We don't know what it means. I think that's fair comment, Your Honor. And being involved in another case involving the hate convention here in New York, I would totally agree. Let me ask you something else, and I'm not sure this has any real bearing on the outcome of this case. Why didn't you use belt and suspenders? That is to say there are a number of other methods of service or process that are clearly permitted and clearly sufficient. You did not use those. Looking back, it's hard for me to say definitively. I would be speculating. I don't know exactly why it's possible that... I mean, what you did was, as it turns out, fairly likely to produce the result that we have, which is to say a fight over service of process and a default judgment. If you were interested above all things in avoiding a fight over service of process, avoiding a fight over default judgment, but just getting notice so you could get forward with the lawsuit, it seemed obvious that there were other parts of the treaty that were without any significant ambiguity, well-established practices, and away you go. Your Honor, I can't answer that, unfortunately. It would not happen again, I can say that. And I would say the practice of law is a lifetime learning process. That's all I can say, Your Honor, without sounding flippant. And I can't say why I didn't. And I won't harp on the first notice that you sent out was asking for waiver of service of process, which I gather you did correct. Let me ask you this. Do you agree with the statement of law by your adversary that when we're talking service of process, what is required is actual compliance with the method of service of process, and actual notice is neither here nor there? Yes, I do. I think the actual notice may be a factor that weighs into the court's weighing of this, but... But you do not contest that, in fact, in order for there to be valid service of process, you must have complied with whatever applicable rule there is, and that he might have found out about it or might not have found out about it by some other way. It doesn't make any difference. That's general law, Your Honor, and I would have to agree with that. Okay. In many contexts of service of process, state and federal, I would have to agree with that. We've got cases coming out in our years, tolling the statute of limitations and so on, where the corporation has actual notice but no service of process and they skate every time. Well, I would have to agree with Your Honor on that. Mr. Cavanaugh, that was a question I was asking Mr. Israel. I'm wondering if there's a distinction between actual notice of the action on the one hand and actual receipt of the summons and complaint on the other. Was there anything to show that, one way or the other, that there was not actual receipt of the summons and complaint? I don't think there was anything to show actual receipt of the summons and complaint. I think there was evidence, whether it be circumstantial or more than circumstantial, there was evidence to show notice of the action. Whether there was anything in writing or any record evidence showing actual receipt, I don't recall any, Your Honor. Mr. Cavanaugh, this is Judge Rawlinson. Yes, Your Honor. You cited Leidas and Ackerman in support of your argument, but both of those cases involved registered mail. Is that correct? I believe they did, Your Honor. Do you have any case citations as it relates to ordinary mail, service by ordinary mail? I do not think there have been any cases, Your Honor. All right. Thank you. You still have about four minutes left if you care to use them. I think we've addressed most of the points. And, again, I would just say that, back to the issue of the English law, I think it is critical that, as I believe Your Honor pointed out in a question to my adversary, that Marquis had actually used this post office box as their address in their magazine, and it was the only address in their magazine. Thus, for them to then argue that it was not a place of business or a principal office of their company, I believe is hindsight and disingenuous. Have you ever read the series of cases in which Time magazine is served at the address given in the magazine? No, I'm not familiar with those cases. Time magazine manages to have a different place for service or process than the address listed in the magazine. I am not aware of that. I was looking at this issue strictly under the English law that was addressed by the English solicitor, such that if a service, if it's being held out at their place of business, and particularly where there's some relation and connection to the claim, then I believe they should not be able to argue now that it is not appropriate to be served there. Okay. And I think that would conclude my argument, Your Honor, and I appreciate this opportunity. Thank you very much, Mr. Kavanaugh. Thank you. Mr. Israel, you have some time left to reply. I have no further arguments, Your Honor. Your Honors, if there are further questions, I'll try to answer them. Good question. Thank you very much. Thank you very much, Mr. Israel. Mr. Kavanaugh, thank you. The case does start you this minute. Thank you very much.
judges: Silverman, W Fletcher, Rawlinson